UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

J.R.S.B.,

    Petitioner,

    v.                            CAUSE NO. 3:26-CV-478-CCB-SJF

SAMUEL OLSON, et al.,

    Respondents.

OPINION AND ORDER

Immigration detainee J.R.S.B., by counsel, filed an amended petition for a writ of

habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the

laws or Constitution of the United States. (ECF 10.)

J.R.S.B. is a citizen of Mexico who entered the United States without inspection.

(ECF 16-2 at 4.) He has a criminal history in the United States dating back to 2000. (*Id.* at 3.)

In 2018, he was the victim of a violent crime, and he filed a petition for a U-visa, a program

for crime victims who cooperate with law enforcement. He was found to be prima facie

eligible by the United States Citizenship and Immigration Services (USCIS) and was given

a *bona fide* determination, placing him in deferred action, although he remains on a waiting

list for a visa.[1] (ECF 1-3.)

---

[1] The U-visa program was created to encourage noncitizens to cooperate with police. (*See* ECF 10-3.) It provides for a grant of discretionary relief allowing qualifying individuals to apply for work authorization and to remain in the United States for a period of up to four-years. *See* 8 U.S.C. § 1101(a)(15)(U). There is a statutory cap on the number of U-visas that can be granted each year, resulting in a lengthy waiting list of individuals who are determined to be preliminarily eligible for the program. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 274 (7th Cir. 2017). "This results in two separate waiting periods and two adjudications for each petitioner—one for placement on the waiting list and one to receive a U-visa." *Id.*

In March 2026, J.R.S.B. was arrested by local law enforcement in Indiana for battery with a deadly weapon. (ECF 16-2 at 3.) In early April 2026, he was taken into custody by Immigration and Customs Enforcement (ICE) agents in Indiana pursuant to an administrative warrant and served with a Notice to Appear in immigration court. (ECF 16-2 at 2-6.) He was then transferred to Miami Correctional Facility, where he is being held pending the conclusion of his removal proceedings. (ECF 10.) An immigration judge has ordered him removed to Mexico, and his appeal to the Board of Immigration Appeals (BIA) remains pending. (ECF 16-3; ECF 18-1.)

J.R.S.B. argues that immigration officials have not given him an opportunity for release on bond because they view him as ineligible for bond under 8 U.S.C. § 1225(b)(2). (ECF 10.) He argues this statutory provision does not apply to him, and that his detention without an opportunity for bond violates applicable statutes, regulations, and policy directives related to the U-visa program, as well as the Fourth and Fifth Amendments. (*Id.*) He seeks immediate release or a prompt bond hearing before an immigration judge. (*Id.*)

In an order to show cause, the court directed the Respondents to address the petition in light of *De Jesús Aguilar v. English*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), and subsequent cases, which joined the overwhelming majority of other district courts in concluding that § 1225(b)(2) does not apply to noncitizens who are not "seeking admission" at a port of entry and are instead arrested within the interior of the United States. (ECF 31.) The parties were instructed only to brief "what is different or new, not

2

what has been decided, and those issues particular to this petitioner." (*Id.* at 4.) The Respondents answered the petition (ECF 16), and J.R.S.B. filed a reply (ECF 18).

The Respondents repeat their argument from *De Jesús Aguilar* and other recent cases that this court lacks jurisdiction over the petition and that J.R.S.B. is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he is an applicant "seeking admission" within the meaning of that statute. (ECF 16.) These arguments were rejected in *De Jesús Aguliar* and subsequent decisions by judges in this District. *See, e.g., Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.); *Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.). The court continues to be of the view that jurisdiction is secure and that the statute cannot reasonably be interpreted in the manner urged by the government. Notably, the Seventh Circuit held in deciding a motion for a stay pending appeal that the government was not likely to succeed on its argument that the mandatory detention provision contained in § 1225(b)(2) applies to noncitizens who are arrested in the interior of the United States.[2] *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

---

[2] A split panel of the Seventh Circuit recently affirmed the judgment of the district court in part, but there was no majority consensus on the issue of whether 8 U.S.C. § 1225(b)(2) permits the mandatory detention of all noncitizens present in the United States without legal status. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, ___F.4th___, 2026 WL 1223250 (7th Cir. May 5, 2026). One judge rejected the government's interpretation and another adopted it, while the third judge concluded there was no basis to reach that issue. *Id.* The Second Circuit and Sixth Circuit recently rejected the government's interpretation of § 1225(b)(2), whereas the Fifth and Eighth Circuits have approved it. *See Lopez-Campos v. Raycraft*, ___F.4th___, 2026 WL 1283891 (6th Cir. May 11, 2026); *Barbosa da Cunha v. Freden*, ___F.4th___, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). These opinions are not binding in this Circuit, and the court remains convinced that its analysis of § 1225(b)(2) is sound until additional guidance comes from the Seventh Circuit.

The court reaffirms its holding that the mandatory detention provision in 8 U.S.C. § 1225(b)(2) does not apply to individuals like J.R.S.B. who are arrested within the interior of the country years after their arrival. That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). That statute provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The Supreme Court has held that a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing. *Jennings*, 583 U.S. at 306.

Here, J.R.S.B. was arrested pursuant to a warrant, which accords with § 1226(a).[3] (ECF 16-2 at 6.) However, he has not been granted an opportunity for bond because the government views him as ineligible for bond under § 1225(b)(2). This was error for the reasons previously explained. The court concludes that the appropriate remedy in this

---

[3] J.R.S.B. suggests that the warrant is invalid because the date listed is off by one day from the date of his arrest listed in the immigration records. (ECF 18.) However, immigration records reflect that his arrest was "effectuated pursuant to a Warrant for Arrest," (ECF 16-3 at 5), and a presumption of regularity attaches to these records. *See United States v. Zuniga*, 767 F.3d 712, 720 (7th Cir. 2014) ("Under the presumption of regularity doctrine, we will presume that public officers will properly carry out their official duties, so long as there is no evidence to the contrary."); *Varela Martinez v. Warden*, No. 3:25-CV-1057-DRL-SJF, 2026 WL 322742, at *3 (N.D. Ind. Feb. 6, 2026) (Leichty, J.) (immigration detainee did not overcome presumption of regularity that attached to official immigration records). Furthermore, a procedural irregularity with the warrant would not bear on the validity of J.R.S.B.'s detention under 8 U.S.C. § 1226. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984) ("A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry," and "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding"). To the extent he is arguing that a problem with the warrant invalidates his removal proceedings, the court does not have jurisdiction to consider such an argument. *See* 8 U.S.C. § 1252(b)(9).

situation is an order requiring the government to provide him with a prompt bond hearing in accordance with 8 U.S.C. § 1226(a) and its implementing regulations. *See Cornejo Rivera v. Olson*, No. 3:25-CV-1090-CCB-SJF, 2026 WL 81753 (N.D. Ind. Jan. 12, 2026) (Brisco, J.).

The Respondents argue that the court should not grant J.R.S.B. any relief until he exhausts all available administrative remedies. (ECF 16 at 6.) "[E]xhaustion of administrative remedies is not statutorily mandated" in cases brought under § 2241. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). Therefore, whether to require exhaustion is a matter of "sound judicial discretion." *Id.* The court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy or administrative comity, but "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue." *Id.* (citation omitted).

J.R.S.B. argues it would be futile for him to pursue a bond request within the agency in light of *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that noncitizens without legal status are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF 18.) The court agrees. It is evident from the record (and from the many other habeas petitions filed in this District in recent months) that the government views individuals like J.R.S.B. as categorically ineligible for bond.

Recent proceedings in a case out of California further support the conclusion that it would be futile to require him to pursue administrative remedies before granting him habeas relief. In February 2026, a judge in the Central District of California issued an order

5

vacating *Hurtado* on behalf of a nationwide class of individuals who were arrested by ICE within the interior of the United States and denied an opportunity for bond. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), *appeal filed*, *Bautista, et al. v. United States Dep't of Homeland Security, et al.*, No. 26-1044 (9th Cir. Feb. 23, 2026). The government has appealed, and, at the government's request, the Ninth Circuit recently stayed the court's class certification order and final judgment "insofar as they extend beyond the Central District of California," and stayed the court's post-judgment order vacating *Hurtado* in its entirety. *Maldonado Bautista*, No. 26-1044 (9th Cir. order dated Mar. 31, 2026). The district judge's decision vacating *Hurtado* is thus unlikely to change the outcome of a motion for a custody redetermination filed by an individual like J.R.S.B., who is outside of California. These recent proceedings also confirm that the government remains committed to its interpretation of § 1225(b)(2), notwithstanding the prior rulings of this court and many others across the country. The court finds that the exhaustion doctrine does not present a barrier to relief in this case.

Although J.R.S.B. presses for outright release, the court views the opportunity for an individualized bond hearing as the correct remedy. He was detained pursuant to a warrant issued by an immigration officer in accordance with 8 U.S.C. § 1226, and it is for the Attorney General to decide whether release is warranted under the circumstances presented by this case. *See Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases). However, if the government does not provide him with an individualized bond hearing, then he must be released, because

his continued detention without an opportunity for bond is unlawful. 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 306.

Because J.R.S.B. is entitled to relief as a matter of statutory law, the court does not reach his alternate argument that his detention without an opportunity for bond violates the Due Process Clause. *See K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, 121 F.4th 604, 631 (7th Cir. 2024) ("Courts should avoid resolving cases on constitutional grounds when they can be fairly resolved on statutory grounds."). The court also does not reach his assertion that the government should bear the burden of proving that he is not entitled to release at any bond hearing that occurs. (ECF 18 at 16.) This conflicts with usual procedures, which provide that "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." *Johnson*, 594 U.S. at 527. At this point, it is unclear how the government intends to proceed now that the court has determined he cannot be held without bond under 8 U.S.C. § 1225(b)(2). It may decide to release him, or if he is given a bond hearing he might prevail before an immigration judge or be able to obtain relief from the Board of Immigration Appeals. *See* 8 C.F.R. § 236.1(d)(3), 1236.1(d)(3) (providing for appeal of bond determinations to the Board of Immigration Appeals). Without a prior denial of bond on the merits that is alleged to be erroneous, the court leaves the parties to follow the usual process under § 1226.

Finally, the court does not reach J.R.S.B.'s argument that he cannot be subject to an immigration enforcement action because of his deferred-action status, or that the

immigration judge violated his rights as a U-visa applicant during his hearing.[4] (*See* ECF 18 at 7-12.) Issues regarding his ongoing removal proceedings fall outside the scope of this court's review. The Immigration and Nationality Act (INA) provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). The INA further establishes that judicial review of a final order must occur in "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). Thus, this court lacks jurisdiction to review the merits of a removal order or any procedural irregularities associated with that process.[5] *Morales-Ramirez v. Reno*, 209 F.3d 977, 979 (7th Cir. 2000).

For these reasons, the court:

---

[4] It is worth noting that U-visa status is not guaranteed, and one of the policies J.R.S.B. invokes expressly provides that U-visa applicants are subject to immigration enforcement action when they "pose an articulable risk of . . . physical harm to any person." (ECF 10-2 at 3.) Immigration records reflect that the criminal charge pending against J.R.S.B. stemmed from an altercation between him and an "extended family member," during which J.R.S.B. "went to his vehicle and retrieved a machete" and then swung it at the victim. (ECF 16-3 at 4.) The victim was observed by police to have a "sharp cut" on his right hand "that probably required stitches," as well as a black eye and "bruises on other parts of his body." (*Id.*)

[5] J.R.S.B. filed a notice of supplemental authority (ECF 19), asserting that he is a class member in a California case brought under the Administrative Procedures Act addressing whether, and under what terms, individuals who are the subject of a *bona fide* determination regarding eligibility for U-visas and certain other types of programs can be removed from the United States. *Immigr. Ctr. for Women, et al., v. Noem, et al.*, No. 2:25-CV-09848-AB-AS, 2026 WL 1455004, at *19 (C.D. Cal. May 20, 2026). He is free to seek relief as a purported class member in that case, but the case is still in the very preliminary stages, and another court's non-final order is not subject to preclusive effect in this proceeding. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). He also cites to *Espinoza Cruz*, No. 3:25-CV-919-CCB-SJF, 2025 WL 3676992 (N.D. Ind. Dec. 18, 2025), for the proposition that detention is improper because of his deferred-action status, but that case pertained to the propriety of detention under 8 U.S.C. § 1231, where removal proceedings have become final and detention is authorized only if removal is "reasonably foreseeable." *Espinoza Cruz* did not address the propriety of detention under 8 U.S.C. § 1226, which is at issue here, nor does that case undercut the court's conclusion that J.R.S.B.'s arguments related to his deferred-action status must be raised with the agency and, if necessary, the court of appeals.

(1) **CONDITIONALLY GRANTS** the amended petition (ECF 10) and **ORDERS** the Respondents to release J.R.S.B. on or before **June 3, 2026**, unless he is provided with an individualized bond hearing pursuant to 8 U.S.C. § 1226 and corresponding regulations;

(2) **DIRECTS** the clerk to email forthwith a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure compliance with this order; and

(3) **ORDERS** the Respondents to file proof of compliance with this order by **June 5, 2026.**

SO ORDERED on May 27, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

9